IN THE UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| Gustavo Mercado Santiago<br><br>PLAINTIFF<br><br>V.<br><br>Viviana Marie Lloret, Kenneth Arocho, El Nuevo Corazón del Seis de Aguadilla, John Does 1-10, & ABC Corp 1-10, et al.<br><br>DEFENDANTS | Case No.<br><br>Judge:<br><br>**COMPLAINT AND JURY DEMAND**<br><br>FOR DAMAGES IN VIOLATION OF<br><br>42 U.S.C. §2000a(b) et seq.<br><br>&<br><br>31 LPRA § 10801 |

# COMPLAINT

Plaintiff Gustavo Mercado Santiago brings this Complaint against defendants herein, and in support thereof alleges as follows:

1. This is a complex civil action for remedies authorized *inter alia* by 42 U.S.C. §2000a(b) *et seq.* for actual, consequential and exemplary damages; and for all other relief which this honorable Court deems just and proper under all circumstances which have occasioned this Initial COMPLAINT.

2. The plaintiff, a 48 y/o a US Army veteran "Newyo-Rican" resident of the state of Florida, who was born in New Brunswick, New Jersey to parents who are themselves native Puerto Ricans, and **who is proud of his Puerto Rican roots,** was a patron at the *El Nuevo Corazon del Seis* bar/restaurant in Aguadilla, Puerto Rico on or about the weekend of July 28, 2023, during the weekend celebrations for **Puerto Rican Constitution day**, and at said location on said date plaintiff suffered a **bloody, gruesome beating** by **multiple assailants -** none of whom were injured - which resulted in severe, permanent, mostly defensive injuries to plaintiff necessitating surgery, as well as possible Traumatic Brain Injury (TBI) and related epirmotional sequelae.

3. Defendants are the owners of the bar/restaurant, and they also participated in the beating and/or allowed or encouraged *multiple* visibly drunken patrons to **aggressively and repeatedly strike or assault plaintiff** while he was on the floor, recognizing that he was a male "New-yo Rican" because of his thick Spanish accent and overall appearance.

# SUBJECT MATTER JURISDICTION

4. **Federal Question Jurisdiction**: Subject matter jurisdiction is proper in this matter pursuant to 42 U.S.C. §2000a(b) *et seq* and 28 U.S.C. § 1331. This Court has jurisdiction over the state law claims, *infra*, pursuant to 28 U.S.C. § 1367 *et seq*.

5. **Diversity Jurisdiction:** Jurisdiction is also proper under 28 U.S.C. § 1332, since the plaintiff is a citizen or resident of Florida, and defendants are all citizens or residents of the Commonwealth of Puerto Rico, and the controversy exceeds the sum of $75,000.00.

# PARTIES

6. The plaintiff is a 48 y/o resident of Kissimmee, Florida who was born in New Brunswick, New Jersey to native Puerto Ricans parents, and was visiting his parents in Isabela, Puerto Rico, on or about the date of the gruesome beating.

7. Defendants include the *Nuevo Corazon Del Seis* bar restaurant in Aguadilla, as well as its owners individually, Viviana Marie Lloret and Kenneth Arocho who, upon information and belief, are husband and wife.

# COUNT I.
## Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq.
## Discrimination Because of "New-Yo Rican" Status

### I. GENERAL ALLEGATIONS

1. On the evening of Friday July 28th 2023 plaintiff left his parent's guesthouse around 8:45 p.m. and arrived at Walmart in Plaza Isabela PR shortly thereafter.

2. He then texted a lady friend to arrange an outing.

3. As he waited for a reply, he proceeded to go into a nearby Walmart and, not having yet heard back from the friend he texted, he headed to the Aguadilla Marriott Courtyard to wait for her.

4. However, as he drove to the Marriott, he realized he needed to use a men's room, and since he was aware that the Nuevo Seis establishment in Aguadilla had a bathroom, he entered the establishment *circa* 10 p.m. on that date.

5. Afterwards, he decided to purchase a beer to financially support this local establishment whose restroom he had just used.

6. When he made his way to the bar, he was greeted by a smiling seemingly pleasant female bartender, defendant Viviana Lloret, and he responded with his own smile and friendly gestures or comments which were made using his thick **"New Yo-Rican" accent,** in **Spanglish.**

7. **The commentary may have reasonably been perceived as a compliment or "piropo" – which is neither uncommon nor threatening and certainly doesn't warrant a near-death beating under <u>any</u> circumstance**.

8. Plaintiff then ordered a **Heineken,** which is a non-local imported beer and which - coupled with his use of "Spanglish" - likely caused those around him to stereotype him as a *pompous* foreigner.

9. In fact, the barmaid, defendant Viviana Lloret, having been privy to plaintiff's accented Spanglish compliments and his choice of non-local beer, seemingly rolled her eyes as she gave plaintiff his chosen beer, while expressing disdain and/or anger.

10. Plaintiff Mercado then paid for his beer in cash, and in doing so exposed hundreds of dollars in cash, and this was likely also (mis)interpreted as a pompous "gringo" flashing his wealth to impress a local Puerto Rican woman.

11. **It bears noting, as stated *supra*, that plaitntiff is a proud Puerto Rican from the diaspora, whose parents are native Puerto Ricans, yet plaintiff was stereotyped as an "outsider"**.

12. Plaintiff's "Spanglish" flirtations were apparently deemed to have crossed some line by the bartender's spouse, **defendant Kenneth Arocho**, who then approached plaintiff aggressively to "defend" his spouse (defendant Viviana Marie Lloret) .

13. Mr. Arocho appears in these Facebook pictures at "*El Nuevo Corazon del Seis*" bar (and elsewhere) *inter alia* drinking a "Medalla" and consorting with some male patrons or his "boys":



Arocho (Center)



Arocho (Right)



Arocho (left)

Arocho (2nd from Left)

**Mercado v. Arocho Et al,  42 U.S.C. §2000a(b) Complaint**   `Page 6 of 20`

14. Mr. Arocho in his misperceived "machismo" thus *insisted* that the bartender-wife should be "respected", to which plaintiff briskly and confidently responded in heavily accented "Spanglish" that he had not been "disrespectful" at all.

15. Defendant Arocho grew increasingly agitated, seemingly provoked by the plaintiff's use of "Spanglish," the plaintiff's unwavering denial of any wrongdoing, and the perceived lack of an apology from this "gringo" for allegedly flirting with "*his*" wife.

16. Arocho thus continued to confront and provoke the plaintiff assertively, closing the distance to a mere inches from plaintiff's persona, and adopting a confrontational "fighting" stance through his body language and assertive arm movements—while the plaintiff **remained seated and vulnerable**.

17. **It should be noted that at no time did plaintiff strike Arocho's wife (barmaid Defendant Llorett), hurt her physically, insult her, touch her, or call her derogatory names, and Llorett did not explicitly tell plaintiff to move elsewhere, or to stop the Spanglish compliments, and neither did she walk away or explicitly summon someone for help – <u>because she was not being "attacked"</u>.**

18. Conftonted by a madman, plaintiff then stood up from his chair, and because Mr. Arocho was merely inches away from him, he now stood eye-to-eye with Mr. Arocho, somewhat fearful of the unprovoked aggression, and he entered "fight or flight" mode at this point, which was reasonable in light of the circumstances.

19. **At all times, his wife (defendant Llorett) was watching Arocho's overtures, and it is therefore likely that Mr. Arocho was putting on a show to impress and demonstrate his "manhood" to his wife.**

20. Mr. Arocho thus closed the distance even further as the plaintiff stood up, remaining eye-to-eye with plaintiff. He then unleashed another barrage of "macho man" rhetoric, ostensibly "defending" his spouse, and in doing so brushed up against plaintiff and **initiated further physical contact with his rapidly moving arms as well as his torso, including shoving and what could reasonably be interpreted as grabbing or even a jab**.

21. This interaction naturally escalated into a scuffle as plaintiff sought to defend himself, prompting an unknown patron to exclaim, in Spanish, "*Look! The f_cker from the USA (is now fighting Arocho)*."

22. Plaintiff, who was **unarmed, alone, struck no one, and posed no threat,** at all times acted defensively and in fact - none of the assailants suffered injury, *infra*, because plaintiff was the victim, and defendants the aggressors, as depicted *inter alia* by plaintiff's defensive wounds, *infra*.

23. The scuffle then bled into the dining area where patrons had been drinking and celebrating Puerto Rico's patriotic day, many of whom had been observing Mr. Arocho's overtures against the Heiniken-drinking foreigner who had dared to flirt with a local married woman using "Spanglish" rhetoric.

24. At least four, and potentially more, *drunken* patron/assailants went in to join the mele - not to subdue plaintiff as would have been the case had plaintiff been the

aggressor - but to further penalize, beat, pummel, and hurt him, likely out of anger that this "foreigner" New-Yo Rican had crossed *some* lines and disrespected the "beloved" owners of a local, native Puerto Rican-owned establishment.

25. Upon information and belief, these drunken patron/assailants were friends or frequent guests of Mr. Arocho, and they were also likely aware of the presence of a "gringo" who had dared to flirt with a "taken" local using Spanglish.

26. In fact, plaintiff prior to the altercation **had observed the patrons drinking,** as they celebrated Puerto Rico's Constitution day, and as can reasonably be expected at a bar/restaurant.

27. **None of the drunken patrons suffered injuries** - and neither did overbearing "macho man" defendant Arocho, since <u>plaintiff attacked no one and in fact suffered extensive defensive injuries to his arms,</u> *infra*.

28. Further, no attempt was made to subdue an "aggressive" plaintiff, as would have been possible with five assailants, had their intention been to subdue an unruly aggressive customer.

29. And neither was the police called for this customer (plaintiff) - because he was not aggressive - and instead the intent of the drunken patrons and (overbearing) defendant Arocho was to enforce cultural "street" laws - or street norms - on their own in their own fashion - by administering a beating effectively using "flirtatious" Spanglish-speaking foreigner plaintiff as a **celebratory piñata** to celebrate Puerto Rico's Constitution day.

## PLAINTIFF SUFFERED SEVERE DEFENSIVE WOUNDS AS A RESULT OF THE BEATING

30. Plaintiff was thus beaten and pummeled aggressively for **three to five minutes**, including a **blow to the back of his head with an unknown object**, and he bled profusely and **lost consciousness** momentarily as he lay on the floor, to wit:

 

 

31. **These wounds, it is respectfully submitted, clearly depict <span style="color:red">defensive injuries</span> (e.g. forearm injuries and dislocated shoulder) as plaintiff desperatately sought to defend himself from his drunken attackers as well as from overzealous, overbearing "macho-man" defendant Arocho.**

32. Plaintiff's xrays in fact showed the extent of the severe shoulder injury:



33. Plaintiff eventually regained consciousness, and overheard someone say in Spanish something along the lines of "*he's had enough*" (hereinafter "good patron 1").

34. However, as plaintiff's pants had been pulled down or fell below his waist, and his shoulder had been dislocated (**and subsequently operated on**), he was unable to get up after the beating.

35. "Good patron 2" (which may - or may not - have been "good patron 1"), then helped plaintiff get up.

36. Plaintiff then staggered into his Jeep Cherokee to avoid a further beating, causing blood to splatter or drip everywhere in his vehicle, and drove himself to the Emergency Room, to wit:




37. It bears noting, once again, that none of the assailants suffered injury, neither did they subdue or hold plaintiff for the police to arrive - because plaintiff was not the aggressor.

38. **The aggressors were instead defendants, who purposefully, with malice and racial, ethnic, or sexist animus, severely beat, pummeled, and assaulted the plaintiff simply because he - being an unwelcomed foreigner on Puerto Rico's Constitution day weekend - dared to flirt with a local married woman in**

**Spanglish, even ordering a non-local beer while doing so.**

39. Defendants did not offer to help plaintiff, instead contending that he deserved the beating, that he "asked for it" according to defendant bar-maid/owner Viviana Lloret's utterance as plaintiff fled to his car.

40. Some time after the assault, plaintiff noticed that some of the cash money he had in his possession had been missing, *infra*.

## PLAINTIFF'S INJURIES WERE SEVERE, PERMANENT, AND <u>DEFENSIVE</u> IN NATURE

41. As depicted and corroborated by the numerous blows to the head, a bump or lesion on his head which bleeds to this day, and his loss of consciousness, plaintiff suffered TBI, or Traumatic Brain Injury, as a result of this unwarranted beating.

42. In addition, plaintiff will undergo surgery to his right shoulder, and suffered other forms of severe, debilitating, permanent injuries as a result of the beating.

43. **Moreover, plaintiff's *multiple* arm injuries, as well as his shoulder injury, were <u>defensive</u> in nature and depict a <u>brutal</u> beating by multiple assailants.**

## PRESS COVERAGE OF THE JULY 28, 2023 INCIDENT

44. Multiple media outlets, including "Primera Hora", acknowledged the severe beating, also pointing out that moneys belonging to plaintiff may have been misappropriated during the beating, thus consituting a potential robbery.

## POLICE INVESTIGATION DID NOT DISCLOSE ANY INJURIES SUFFERED BY THE ASSAILANTS - BECAUSE THE ASSAILANTS WERE THE AGGRESSORS

45. The Police Investigation was notable in that it acknowledged that plaintiff suffered severe injury, while making no such injury claims about defendants - since defendants were not hurt during this one-sided assault.

46. The police report also noted that the potentially drunken assailants who aided Mr. Arocho, patrons of the bar/restaurant, remained unidentified, and **that the altercation began as a result of an argument between plaintiff and a man stemming from "comments" that plaintiff made to a female employee**.

47. This "man" who argued with plaintiff as a result of his "comments", defendant Arocho, had not yet been identified by name at the time of the police report, and was subsequently identified from public Facebook postings.

48. The police report also noted that plaintiff was not *verbally* threatened, e.g., that he was not told "*I'm going to strike you if you continue with your compliments to my wife*", since the threats by Arocho were primarily physical – with his body language and tone of voice.

49. The report further noted that plaintiff did not *directly* observe anyone taking his wallet (as he was taking a beating and unaware of other illicit activity, or he may have dropped his wallet when his pants went down).

50. Finally, the report noted that no charges were filed agains the drunken patrons since, *inter alia,* plaintiff could not identify them, and that Mr. Arocho had apparently claimed that it was plaintiff who "initiated" the fight, which goes against the weight of the evidence, to wit: defensive wounds by plaintiff, plaintiff was approached by Arocho intially as he sat at the bar, <u>not one</u> of the defendants was injured, plaintiff did not strike Llorett, *et al*.

# LIABILITY

## Title II of the Civil Rights Act of 1964
"New-Yo Rican" Status

51. Defendant Viviana Lloret, owner and barmaid, her husband Kenneth Arocho, also owner of "El Nuevo Corazon del Seis" bar/restaurant, are jointly and severally liable, along with the John Doe defendants (drunken patrons), for violating plaintiff's civil rights in that they were motivated by plaintiff's status as a "New-yo Rican" on Puerto Rico's Constitution Day.

52. More specifically, plaintiff ordered a non local beer, and spoke with a heavy/thick "Spanglish" accent, and for that reason alone, his otherwise harmless flirtatious marks were seen as having crossed some cultural line by defendants, who repeatedly and without provocation pummeled plaintiff, including a hit from the back with an unknown object, rendering him unconsious, bloodied, and with severe permanent injury, *supra*.

53. Defendant Vivian Lloret is vicariously liable for the acts of her husband, Kenneth Arocho, as owner of the establishment, and she is further liable for the

torts of the drunken patrons accordingly, as is defendant Arocho as part owner of the establishment.

**WHEREFORE** plaintiff demands judgment on this Count against defendants for THE SUM OF **FIVE MILLION DOLLARS**, OR ONE MILLION DOLLARS FOR EACH MINUTE OF THE BEATING AND/OR FOR ANY OTHER RELIEF THIS COURT DEEMS APPROPRIATE AND JUST.

# COUNT II

Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq.
**Discrimination Because of Status as a Male**

1. Plaintiff repeats the allegations contained in **Count I**, **¶1 to ¶50,** and makes them a part hereof.

2. Mr. Arocho exhibited "ownership" of his wife, Viviana Llorett, treating her as his untouchable property, and not permitting any males – particularly foreigners – to direct at her *any* commentary, however bening, which he himself subjectively deemed overly flirtatious.

3. Having been motivated by plaintiff's status as a male who levied compliments at his wife, Arocho then provoked and aggresively assaulted and pummeled plaintiff causing severe permanent injury.

4. The drunken patrons (John Does 1-10), having been motivated by the same sexist animus that women belong to men and men must "defend" them

under *any* circumstance, also severely assaulted plaintiff **because of his status as a man**, and are liable accordingly.

**WHEREFORE** plaintiff demands judgment on this Count against defendants for THE SUM OF **FIVE MILLION DOLLARS**, OR ONE MILLION DOLLARS FOR EACH MINUTE OF THE BEATING AND/OR FOR ANY OTHER RELIEF THIS COURT DEEMS APPROPRIATE AND JUST.

# COUNT III
## 31 LPRA § 10801 (2020 & Supl. 2022)
## Negligence

1. Plaintiff repeats the allegations contained in **Count I**, ⁋**1 to** ⁋**50,** and makes them a part hereof.

2. Defendants are jointly and severally liabile under Puerto Rico's recently amended civil code negligence law.

**WHEREFORE** plaintiff demands judgment on this Count against defendants for THE SUM OF **FIVE MILLION DOLLARS**, OR ONE MILLION DOLLARS FOR EACH MINUTE OF THE BEATING AND/OR FOR ANY OTHER RELIEF THIS COURT DEEMS APPROPRIATE AND JUST.

# COUNT IV
## 31 LPRA § 10801 (2020 & Supl. 2022)
## DRAM SHOP CLAIM

1. Plaintiff repeats the allegations contained in **Count I**, **₱1 to ₱50,** and makes them a part hereof.

2. Defendants are jointly and severally liabile under Puerto Rico's Dram Shop laws as interpreted by Puerto Rico tribunals.

**WHEREFORE** plaintiff demands judgment on this Count against defendants for THE SUM OF **FIVE MILLION DOLLARS**, OR ONE MILLION DOLLARS FOR EACH MINUTE OF THE BEATING AND/OR FOR ANY OTHER RELIEF THIS COURT DEEMS APPROPRIATE AND JUST.

# COUNT V
## 31 LPRA § 10801 (2020 & Supl. 2022)
## ASSAULT AND BATTERY

1. Plaintiff repeats the allegations contained in **Count I**, **₱1 to ₱50,** and makes them a part hereof.

2. The conduct of all defendants consitutes the intentional tort of assault and

   battery, for which all defendants are culpable.

3. Defendant Llorett is vicariously liable for the assault and/or otherwise participated by inter alia supporting her husband and the patrons as they assaulted plaintiff.

**WHEREFORE** plaintiff demands judgment on this Count against defendants for THE SUM OF **FIVE MILLION DOLLARS**, OR ONE MILLION DOLLARS FOR EACH MINUTE OF THE BEATING AND/OR FOR ANY OTHER RELIEF THIS COURT DEEMS APPROPRIATE AND JUST.

# COUNT VI
John Does 1-10, ABC Corp 1-10
31 LPRA § 10801 (2020 & Supl. 2022)
Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq.

1. Plaintiff repeats the allegations contained in **Count I**, **₱1 to ₱50,** and makes them a part hereof.

2. The unidentified drunken patrons are liable for the assault, which was motivated by their animus towards "New-Yo Ricans" as well as by plaintiff's status as a male who flirted with a local woman in Spanglish.

3. They are thus liable for negligence, assault and battery, and Title II of the Civil Rights Act of 1964.

**WHEREFORE** plaintiff demands judgment on this Count against defendants for THE SUM OF **FIVE MILLION DOLLARS**, OR ONE MILLION DOLLARS FOR EACH MINUTE OF THE BEATING AND/OR FOR ANY OTHER RELIEF THIS COURT DEEMS APPROPRIATE AND JUST.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

Respectfully submitted,

December 11, 2023

*/s/ Santos A. Perez-Mercado.*
Lcdo. Santos A. Perez-Mercado.
**USDC-PR 308105**
The Perez Law Firm
(201)875-2266
sperez@njlawcounsel.com
Attorney for Plaintiff